UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| **In Re:**<br><br>**Stephen J. Anderson and Melanie Anderson,**<br><br>　　　　　　　**Debtors.** | **Bankruptcy Case<br>No. 15-40878-JMM** |
| **Gary L. Rainsdon,**<br><br>　　　　　　　**Plaintiff,**<br><br>**vs.**<br><br>**Win Realty, LLLP, an Idaho limited liability limited partnership doing business as Keller Williams Realty East Idaho, and Mike Hicks,**<br><br>　　　　　　　**Defendants.** | **Adv. Proceeding<br>No.17-08040-JMM** |

**MEMORANDUM OF DECISION**

**Appearances:**

　　　Patrick J. Geile, FOLEY FREEMAN, PLLC, Meridian, Idaho, and Jason Steven Risch, RISCH PISCA, PLLC, Boise, Idaho, attorneys for Defendants.

　　　Jason R. Naess, PARSON, SMITH, STONE, LOVELAND & SHIRLEY, Burley, Idaho, attorney for Plaintiff chapter 7 trustee.

*Introduction*

　　　Before the Court is a summary judgment motion filed by Defendants Win Realty, LLLP ("Win") doing business as Keller Williams Realty East Idaho ("Keller") and Mike

MEMORANDUM OF DECISION − 1

Hicks ("Hicks") (collectively "Defendants").  Dkt. No. 17.  The chapter 7[1] trustee, Gary L. Rainsdon ("Trustee") opposed the motion.  Dkt. No. 32.  The Court heard oral argument on the matter on April 16, 2018, and thereafter took the motion under advisement.

The Court has considered the briefing, affidavits, exhibits, and oral argument presented, as well as the applicable law, and now issues the following decision which resolves the motion.  Fed. R. Bankr. P. 7052; 9014.

*I. Motion to strike*

Before the Court can consider the motion for summary judgment, it must first resolve a motion to strike filed by Trustee.  Dkt. No. 35.  In the motion, Trustee seeks to strike portions of the amended affidavit of Michael James Johnston, Dkt. No. 22, on the grounds that specific assertions in the Johnston affidavit contain impermissible opinions or legal conclusions.  Civil Rule 56(c)(4), make applicable by Rule 7056, provides:

> An affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

*See also, DBSI Signature Place, LLC v. BL Greensboro, L.P.*, 392 F.Supp. 2d 1206, 1210 (D. Idaho 2005) (noting that affidavits should not contain ultimate or conclusory facts

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION − 2

and conclusions of law, and a court is not bound to accept as true a legal conclusion couched as a factual allegation).

In his motion, Trustee indicated the portions of the Johnston affidavit with which he takes issue. Dkt. No. 35. The Court has reviewed Trustee's submission, and agrees that the portions highlighted are opinions or legal conclusions rather than facts based on Johnston's personal knowledge. As such, they are properly stricken and the Court will not consider, in resolving the motion before it, those four instances in the amended Johnston affidavit where legal conclusions are stated as factual knowledge. *Idaho Conservation League v. Atlanta Gold Corp.*, 844 F.Supp. 1116, 1124 (D. Idaho 2012) ("When a motion to strike challenges the admissibility of an affidavit or declaration, the Court must disregard only those portions of the submission which are inadequate pursuant to the rules."). Accordingly, Trustee's motion to strike is granted.

## *Undisputed Facts*

Debtors are both licensed real estate agents, and work to connect buyers with desired real estate, as well as to identify sellers and list their real property for sale. They work through a broker, Michael James Johnston, who is affiliated with Keller. Am. Johnston Aff., Dkt. No. 22 at ¶ 2; Dkt. No. 34-5. They are also affiliated with the Mike Hicks Realty Group within Keller pursuant to a Group/Team Contract ("Contract"). Dkt. No. 22, Ex. A. The Contract between Hicks and the Debtors was signed on August 6, 2014. *Id.* Keller is not a party to it, although the Keller Williams logo appears on the form. *Id.* The Contract names the team/group as the "Mike Hicks Realty Group" and

MEMORANDUM OF DECISION − 3

lists Mike Hicks as the lead agent and the Debtors as members of the group or team. *Id*. The Contract provides for a 60/40 split between Debtors and Hicks when Debtors represent the buyers in a transaction, and a 55/45 split when they are the listing agents on the deal. *Id*. The Contract further obligates Hicks to pay the office rent, Edge Fee, and Consortium cost.[2] *Id.*

Debtors also pay a "cap" to Keller in the amount of $18,000 annually, beginning each April 1. Hearing Transcript, Dkt. No. 34-3 at pp. 20-21; Dkt. No. 22 at Ex. A (The Contract also specifies that the member [Debtors] is responsible to pay the cap). Debtors pay their cap by having Keller withhold 36% of each commission until the $18,000 is paid. *Id*. at pp. 20, 52. The cap is paid to Keller to allow Debtors to affiliate their real estate agent licenses with a broker. *Id*. at p. 20. The cap is paid first before further commission disbursements are made. Am. Johnston Aff., Dkt. No. 22 at ¶¶ 10, 15.

As each real estate contract is completed, the commission is paid to Keller, who then makes disbursements. *Id*. at ¶¶ 7, 9, Ex. A. Thus, when Debtors arrange a sale or purchase of real estate, and a commission is owed, that commission is paid directly to Keller and deposited in Keller's Win account, which retains the cap percentage. After subtracting the amount to be applied to Debtors' cap, Keller then cuts two checks to split the balance of the commission between Hicks and Debtors, according to the Contract in place. The portion going to Hicks is for services including clerical and administrative

---

[2] No evidence was introduced that described what are either the Edge Fee or the Consortium cost.

MEMORANDUM OF DECISION − 4

work associated with the listing, as well as photography, advertising, and support work. Am. Johnston Aff., Dkt. No. 22 at ¶ 11.  Debtors' portion is paid to a separate business entity, Bastille Enterprises, Inc., while Hicks' portion is paid to Midas Touch, LLC. *Id*. at ¶¶ 12, 13, 15.

On September 9, 2015, the date Debtors filed a chapter 7 petition, Debtors were involved in twelve real estate transactions that were "in process," meaning that a sales contract had been executed by the buyer and seller, but the sale had yet to close.  After varying amounts of time and effort by Debtors, each of these transactions eventually closed. Dkt. Nos. 34-1, 34-2. Commissions were subsequently paid to Keller, which then paid out the respective shares of the commissions to Debtors and Hicks. Debtors had met their annual cap by this time, so Keller did not withhold any amounts from the commissions to satisfy the cap. Tr. at p. 21, Dkt. No. 34-3.

On April 6, 2016, Trustee filed a motion for turnover of the real estate commissions paid post-petition to Debtors for contracts their clients entered into pre-petition. Aff. of Gary L. Rainsdon, Dkt. No. 34 at ¶3; BK Dkt. No. 43. As a result of the motion, the Court entered an order requiring Debtors to turn over the $52,485.92 in commissions they received post-petition for contracts entered into pre-petition. *Id*. at ¶ 5; Dkt. No. 34-4. This decision was affirmed by the Ninth Circuit Bankruptcy Appellate Panel on August 11, 2017. BAP No. ID-16-1316-JuFB, Dkt. No. 21.

On September 8, 2017, Trustee commenced this adversary proceeding against Defendants seeking to reclaim under §§542 and 549 the additional amount of

MEMORANDUM OF DECISION − 5

$52,836.26[3] in commissions paid to Win Realty/Keller which were subsequently disbursed to Hicks. Dkt. No. 1. On February 5, 2018, Defendants filed a motion for summary judgment on the allegations raised in the adversary complaint. Dkt. No. 17. Trustee has timely opposed the motion.

### *Summary Judgment Standard*

The standards guiding the Court in considering a motion for summary judgment are well settled. Summary judgment is properly granted when no genuine and disputed issues of material fact exist, and, when viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Civil Rule 56, incorporated by Rule 7056; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001).

Further, the Court does not weigh the evidence in considering summary judgment. It determines only whether a material factual dispute remains for trial. *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997). An issue is "genuine" if there is sufficient evidence for a reasonable finder of fact to find in favor of the non-moving party, and a fact is "material" if it might affect the outcome of the case. *Far Out Prods*., 247 F.3d at 992 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49

---

[3] In the Defendants' answer, they allege that the total amount paid to Hicks by Keller is $40,128.66, Dkt. No. 8 at ¶ 9, as opposed to the $52,836.26 alleged in the Complaint, Dkt. No. 1 at ¶ 14. While the amount actually paid to Hicks is a disputed fact, that determination is not relevant to the disposition of the Motion for Summary Judgment since this Court concludes that the amount the broker paid to Hicks is not property of the bankruptcy estate.

MEMORANDUM OF DECISION − 6

(1986)). The substantive law will identify which facts are material. *Anderson,* 477 U.S. at 248.

The initial burden of showing there is no genuine issue of material fact rests on the moving party. *Esposito v. Noyes (In re Lake Country Invs.)*, 255 B.R. 588, 597 (Bankr. D. Idaho 2000) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998)). If the non-moving party bears the ultimate burden of proof on an element at trial, that party must make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment. *Id*. (citing *Celotex,* 477 U.S. at 322-23).

### *Analysis and Disposition*

## II. Turnover Under § 542

Section 542(a) provides that an entity in possession, custody, or control, during a bankruptcy case, of property of the estate that may be used, sold, or leased by the trustee, must deliver that property, or its value, to the trustee and must account to the trustee for the property or its value. Moreover, § 541(a)(6) provides that proceeds, products, offspring, rents, or profits from services performed by Debtors prior to the commencement of their bankruptcy case are property of the estate. In this case, Trustee contends that Debtors did all they needed to do to earn the commissions before the bankruptcy was filed, and thus the entirety of each commission was property of their bankruptcy estate. As such, Keller, through Win, was required to deliver to Trustee any portions of those commissions it paid to Hicks.

MEMORANDUM OF DECISION − 7

While this Court has previously determined that the commissions Debtors actually received were, in fact, property of the estate and subject to turnover, the issue before the Court here is whether the portion of the commissions paid to Hicks by Keller should be treated in similar fashion. Defendants contend that the commissions belonged to Keller in the first instance, and thus are not property of Debtors' bankruptcy estate.

A.   Idaho Real Estate Law

Property interests are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 55 (1979); *Anderson v. Rainsdon*, 572 B.R 743, 748 (9th Cir. BAP 2017) (State law generally governs property interests within the context of a bankruptcy case). Idaho's statute of frauds requires that contracts respecting real estate commissions be in writing, Idaho Code § 9-508, and fee splitting with an individual who is not "actively licensed" is prohibited, Idaho Code § 54-2054(2). Furthermore, all commissions for the purchase and sale of real estate in Idaho must be paid through a broker:

> All fees must be paid through broker. No sales associate shall accept any commission, compensation or fee for the performance of any acts requiring a real estate license from any person except the real estate broker with whom the sales associate is licensed. However, if authorized by the broker, a sales associate may:
> (a) Pay all or any portion of the accepted commission, compensation or fee to any other sales associate who is licensed with the same broker;[4] or
> (b) Accept payment from an unlicensed entity paid by the broker in accordance with subsection (2) of this section.

---

[4] Trustee makes no argument, nor was there evidence presented, that Keller, as the broker, authorized Debtors, as sales associates, to pay all or any portion of the accepted commission. Rather, it was Keller who paid Hicks directly.

MEMORANDUM OF DECISION − 8

Idaho Code § 54-2054(9); *Maclay v. Idaho Real Estate Com'n*, 300 P.3d 616, 623 (Idaho 2012).

Finally, a broker may split a fee with an unlicensed legal business entity if all of the entity's shareholders or members are active real estate licensees, and "[a]n owner licensed under the broker performed the licensed activities for which the payment is made." Idaho Code § 54-2054(2).

B.  Application to the Facts

The crux of the issues before the Court is the ownership of the sales contracts, and thus the commissions, in the first instance. The Court can locate no case law interpreting Idaho statutes on point on this issue, nor have the parties cited any authority for this point of law. The Court concludes, as a matter of law, that the commissions at issue belong to Keller, as the broker, and that Debtors, as sales agents, have a property interest in the share they are contractually entitled to receive.

This conclusion is based upon Idaho Code § 54-2054(9), which provides that commissions must be paid through Keller, and that Debtors by law may not directly accept any commission for their work in helping clients buy or sell real estate. Additionally, in the case at bar, the representation agreement utilized by Debtors when representing sellers provides a space to list the name of the agent who is "Acting as Agent for the Broker," and specifically retains the broker to be the seller's "exclusive Broker to sell, lease, or exchange the property described . . . during the term of this agreement . . . ." Dkt. No. 41-1, Ex. A; Aff. of Mike Hicks, Dkt. No. 41 at ¶¶ 3-4. Thus,

MEMORANDUM OF DECISION − 9

a seller (client) retains the broker, as opposed to any individual agent, on the transaction. The agreement further provides that, should the property sell, the seller "agrees to pay a total brokerage fee" of a specified percentage of the contract or purchase price. *Id*. Nowhere is any payment to a specific agent permitted. The signature block provides a space for the seller's signature, and one for the "Agent or Broker (on behalf of Brokerage)." *Id*. It also provides for a place to insert the address, telephone number, and email for the brokerage, as well as the "Agent/Broker" email.

The Buyer Representation Agreement is constructed similarly. The agent is listed as "Acting as Agent for the Broker," and the buyer retains the broker to represent him or her in purchasing, leasing, or optioning real property. Dkt. No. 41-2. It further provides that, "[i]n consideration of the services to be performed by the Broker, BUYER agrees that broker may be compensated" in several ways, all of which require payment to the broker or payment of a brokerage fee. *Id*. (emphasis in original). The Representation Agreement contains no provision that requires payment to the agent. As with the seller agreement, the signature block provides for a signature by the broker or agent on behalf of the brokerage. The sales agent is not a signatory to the representation agreement in his or her individual capacity, but only as an agent of the broker.

It is notable that the representation agreement forms utilized by Keller are standard forms promulgated by the Idaho Association of Realtors, and are used statewide. Dkt. Nos. 41-1, 41-2 (The bottom of each page contains the following sentences: "This form is printed and distributed by the Idaho REALTORS®, Inc. This form has been designed

MEMORANDUM OF DECISION − 10

and is provided for use by the real estate professionals who are members of the Idaho REALTORS®"); Aff. of Mike Hicks, Dkt. No. 41 at ¶¶ 3, 4.

Under §541(a), the bankruptcy estate includes all legal and equitable interests *of the debtor*. If Debtors do not have a property interest in the entire commission, then the full amount of the commission is not part of the estate. As such, as a matter of law, when Debtors signed a contract to represent a buyer or seller and a real estate deal ultimately closed, the commission earned pursuant to the contract belonged to Keller, as the broker, and not Debtors individually as the agents. Dkt. Nos. 41-1, 41-2, Am. Johnston Aff. at ¶ 5 (Contracts for the purchase or sale of real estate are considered solely owned by Keller.) This conclusion is based both on state law as well as the legal import of the representation agreements described herein. Once earned by Keller, the commission is split according to the Contract in place between Debtors and Hicks. The Contract is separate from the representation agreement and in each of the transactions at issue,[5] was entered prior to the petition. It controls how the broker is to pay any amounts not due to him. As a result, Debtors were never entitled to the full commission, and thus the only

---

[5] The record is not complete as to whether the representation agreements were used in every one of the twelve transactions at issue. Trustee did not object to the implied allegation that in each instance a seller signed a "Seller Representation Agreement" or a buyer signed a "Buyer Representation Agreement." The Trustee, however, attached twelve separate copies of purchase and sale agreements to his affidavit, nine of which either identified the Debtors as the selling or listing agent, and in three contracts, Hicks was actually listed as the listing agent or selling agent. Dkt. Nos. 34-1, 34-2. Because the purchase and sale agreements identified the broker and the Debtors, and because Hicks testified in his affidavit that the representation agreements are executed when contracting with buyers and sellers, and that he uses these forms each year, the Court believes the entry of a representation agreement occurred. Aff. of Mike Hicks in Response to Trustee's Objection to Defendants' Motion for Summary Judgment, Dkt. No. 41 at ¶¶ 3-4.

MEMORANDUM OF DECISION − 11

portion that became property of their bankruptcy estate is the percentage of the commission they were entitled to receive pursuant to the Contract in place with Hicks and on file with Keller.  More significantly though, as indicated above, these funds were not turned over to Debtors and then the percentage was paid to Hicks.  Rather, the funds were disbursed by the broker to Hicks.

The arguments presented by counsel about whether the services performed by Hicks were clerical in nature and did not require a real estate license are immaterial here, as the only portion of the commissions that became part of Debtors' bankruptcy estate are those portions they were contractually entitled to receive.  What Keller, as the broker, did with the remainder of the commission is irrelevant here as Debtors did not control that allocation.

Accordingly, there are no disputed material facts and the Court concludes as a matter of law that the commissions were owned wholly by Keller as the broker, and Debtors and Hicks were entitled to only those portions they contractually earned.  As such, the amounts Keller paid out to Hicks are not part of Debtors' bankruptcy estate and not subject to turnover.

### III. *Post-Petition Transfer Under § 549*

Section 549 provides for the trustee to avoid a transfer "of property of the estate" that occurs after the commencement of the case.  The Court has previously concluded that the commissions earned by Debtors and paid post-petition were part of their bankruptcy estate and subject to turnover. In this decision, the Court concludes, as a

MEMORANDUM OF DECISION − 12

matter of law, that the funds paid to Hicks by Keller through Win were not part of Debtors' estate, as they belong to Keller as the broker in the first instance. As such, they are not recoverable by Trustee as a post-petition transfer under § 549, because funds recoverable under that section must be property of the bankruptcy estate. Keller/Win is not the debtor here, and thus the Court concludes, as a matter of law, that Trustee's attempt to reach the portion of the commissions Keller paid to Hicks via § 549 must fail.

### *Conclusion*

Based upon the undisputed facts and relevant portions of the Idaho Code, the Court concludes, as a matter of law, that when Debtors entered into a contract to represent a buyer or seller and a real estate deal ultimately closed, the commission earned belonged to Keller/Win, as the broker, and not Debtors individually as the agents or Hicks in his role as a team leader. As such, the portion paid to Hicks is not part of Debtors' bankruptcy estate and may not be recovered by Trustee from Keller/Win or Hicks under §§ 542 or 549. Accordingly, Defendants' motion for summary judgment is granted. A separate order will be entered.

DATED: May 10, 2018

_____
JOSEPH M. MEIER
U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION − 13

MEMORANDUM OF DECISION − 14